.PETER MACKIEWICZ, petitioner-respondent,

*v.*

ANNA MACKIEWICZ, defendant-appellant.

[Submitted May 29th, 1931.   Decided October 19th, 1931.]

On appeal from a decree of the court of chancery advised by Advisory Master Colie, who filed the following opinion:

"The petition is for a divorce on the ground of constructive desertion by the wife and her counter-claim is for maintenance.

"The record in the case is confused as to the order of the testimony by reason of the fact that the stenographer who took the testimony the first day of the hearing who had been subjected to 'shell-shock' in the great war—subsequently became so ill mentally that he had to go to a retreat and was unable to read or transcribe the testimony of the petitioner taken on the first day of the hearing.  By stipulation it was agreed that the petitioner should be recalled for direct and cross-examination on the subjects as to which he was examined at the first hearing, such testimony to be taken in the place of, and to stand for the testimony taken on the first day of the hearing.

"The parties were married on January 15th, 1905, and lived together until September 20th, 1926.  The wife's attitude toward her husband became very bitter after July 8th, 1926, when the husband caused the arrest of a man whom he found in the afternoon of that day sitting in his shirt

sleeves in the kitchen talking with petitioner's wife. According to the testimony on behalf of the petitioner, on September 20th, 1926, he found the door of his bedroom—a hall bedroom which he had been occupying as a sleeping apartment for a considerable length of time prior thereto—locked against him by a strong hasp lock and padlock, the testimony being that the padlock was about three inches long by two and a half inches wide; he found his clothing, or a large part of it, in the hall in front of his room and down in the garage a bedstead. A few days prior thereto the bedstead in the hall bedroom occupied by petitioner disappeared and the petitioner found it in his wife's bedroom and he slept in the hall bedroom on the floor, using his clothing for his bed and covering for a few days until he found the room padlocked against him on September 20th, 1926. He slept in the garage in his car for a few days after the 20th of September and then he moved to other quarters, keeping his car in the garage until it was laid up for the winter. On the occasions when he was on the premises in connection with the garage his wife gave him no recognition and to the parties whom he sent to see his wife to endeavor to bring about a reconciliation, she stated that she was through with him.

"The testimony on behalf of the defendant is given by herself and her two daughters. Their manner of testifying showed intense antipathy to the petitioner and made it clear to me that any further efforts he might have made toward a reconciliation would have been futile. The testimony of all three is to the effect that the padlocking of the petitioner's bedroom was done by a woman boarder who came to board with the defendant after her husband had left and that the daughters, or one of them, assisted in putting the padlock on the door. The name of the boarder was known to the defendant and her daughters and her occupation in various places of employment was also known and no testimony was offered explaining the failure to produce the boarder as a witness, nor any testimony given as to efforts to locate her and produce her as a witness.

"The defendant and her daughters further testified in contradiction of the petitioner that the bed placed in the wife's bedroom was not the bed petitioner used in the hall bedroom, as he testified, but was purchased of a well-known furniture dealer—one Jacobs—after the petitioner had moved to other quarters upon being padlocked out of his hall bedroom.

"Three disinterested witnesses testified to seeing the padlock on the hall bedroom door and they impressed me as both disinterested and candid. They not only saw the padlock on the door, but the clothing thrown in the hall and one of them helped the petitioner carry that clothing down to the garage. Later, during the hearings, they again saw the hall bedroom door and the hasp lock was still there but the padlock itself was not attached to the hasp. At the request of both counsel and in their presence I visited the *locus in quo* and found on the door of the hall bedroom a substantial hasp and lock complete except that the padlock itself was not on the hasp.

"My observation of the manner of testifying by the defendant's witnesses led me to have great doubt as to the veracity of their testimony and this doubt was conclusively confirmed by the production of the witness, Jacobs, a substantial business man and wholly disinterested, who testified after an examination of his books that he had not sold to the defendant, as testified to by herself and her two daughters, any bedstead, and further that the defendant had been to see him pending the hearings and asked him to make a false bill for a bedstead such as she and her two daughters swore she had purchased from Jacobs since the petitioner had left her and which she claimed was the bedstead in her bedroom.

"Further the only driver employed by Jacobs during the period involved testified that he had delivered no bedstead at the Mackiewicz home during the period that she and her daughters testified she had purchased and received the bedstead in question. The testimony of the defendant and her two daughters as to the disposition of the bedstead said to have been in the mother's room prior to the alleged purchase of the new bedstead from Jacobs is so full of contradiction that I find it is not worthy of credence.

"Under these circumstances I find that the allegations of the petition are sustained and the petitioner is entitled to the relief prayed for.

"I therefore advise a decree in favor of the petitioner and dismissing the counter-claim of the defendant."

Mr. John J. Clancy, for the appellant.

Mr. William V. Azzoli, for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated by Advisory Master Colie.

For affirmance—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD DEAR, WELLS, JJ. 14.

For reversal—None.